## J. E. PRINCE v. R. L. GOSNELL.

(Filed September 5, 1907.)

(92 Pac. 164.)

**SPECIFIC PERFORMANCE—Contract—Validity—Alienation by Homesteader.** A contract by a homesteader to alienate a portion of the tract while occupied by him as such, when he shall acquire title from the United States, is against public policy and void, and no action either at law or equity can be predicated thereon.

(Syllabus by the Court.)

*Error from the District Court of Comanche County; before F. E. Gillette, Trial Judge.*

Affirmed.

*R. J. Ray* and *J. A. Fain,* for plaintiff in error.

*Ahern & Hetzel* and *McElhoes & Ferris,* for defendant in error.

Opinion of the court by

GARBER, J.:   J. E. Price, the appellant, was plaintiff in the court below, and the appellee, R. L. Gosnell, was defendant.  The plaintiff filed his amended petition in the district court of Comanche county to which a demurrer was interposed by the defendant. From a judgment sustaining the demurrer and dismissing the action, plaintiff appeals.  The election of plaintiff to stand upon his amended petition presents but one question in this court for consideration, viz:   Does the amended petition state facts sufficient to constitute a cause of action?   The petition substantially alleged that the plaintiff was the equitable owner of lot twenty-one (21), in block twenty-four (24), in the town of Frederick, in Comanche county, Oklahoma Territory; that on the 6th day of August, 1901, the Kiowa, Comanche, and Apache Reservation was opened to settlement; that during that year the defendant, Gosnell, Bismark Houssels, and certain other persons associated with them, and known as the Frederick Townsite Company, entered into an agreement and understanding with themselves and with the Bes Line Construction Company, a corporation, to acquire title to a tract of land in Comanche county, Oklahoma Territory, along the line of the Blackwell, Enid & Southwestern Railroad, which was then being constructed through said county, and to open up said tract for townsite purposes for their joint use and benefit, and to share in a division of the lots and the proceeds arising from the same. It was agreed that the town of Frederick should be located on said tract of land, and, as a consideration to Gosnell, Houssels and the Bes Line Townsite Company agreed to cause a depot to be located on said tract and the town to be made a station on said line of road.  In pursuance of said agreement and understanding, it was alleged:   That the said R. L. Gosnell did acquire title to the northwest quarter of section sixteen (16), in township two (2) south, of range seventeen (17) west of the Indian Meridian, in said Comanche county, Oklahoma Territory, and had the same surveyed and platted into a townsite known as the town of Frederick, for the common use and benefit of all the parties actively

engaged in promoting said town; that about the time said town of Frederick was opened up, as aforesaid, the town of Hazel was laid out and opened up about one-half mile south of said town of Frederick on the line of said railroad, and both towns became occupied by many trades and businesses, and a strong rivalry existed between them for supremacy, the occupants and property owners in both places well knowing that both towns could not prosper in such close proximity, and that the abandonment of the one meant the survival and prosperity of the other; that on the 4th day of April, 1902, and for a long time prior thereto, plaintiff owned several business lots in said town of Hazel, on one of which he had a storehouse and was carrying on a mercantile business therein, and was using his means and influence in promoting the town of Hazel; that on said day, for the purpose of inducing the plaintiff to move his storehouse and business from Hazel to Frederick, to and upon the lot in said town of Frederick to be selected by him under a contract hereinafter set forth, and in consideration, in substance, that he would do so, the said Bismark Houssels, for and as manager of the said Frederick Townsite Company, and for their joint common use and benefit, agreed in writing with plaintiff, as follows:

"Gosnell, O. T., 4-4-1902.

"I hereby agree to give Tom Goddard and J. E. Prince one lot each, to be selected by them out of the Frederick Townsite Company property, reserving only such lots as have houses on them, and the corner lot by the side of McCurdy's grocery store.

"[Signed] B. Houssels, for Frederick Townsite Company."

That for the purpose of carrying out the agreement between Gosnell, Houssels, the Bes Line Townsite Company, and the Frederick Townsite Company, the said R. S. Gosnell, Bismark Houssels, and their said associates did induce the plaintiff herein, among others similarly situated, to abandon said townsite of Hazel in order that it might be shown that there was no townsite near the proposed townsite of Frederick, and that it was necessary to etablish a townsite upon the said tract of land as shown by the application of Robert Gosnell to commute said tract

for townsite purposes, and for the purpose of securing a patent to said land under the act of congress of May 11, 1902, extending the provisions of the act of May 2, 1890, to and making it applicable to said lands, and for the purpose of avoiding the formal resubmission of townsite proof in support of his said application, and to secure patent upon the original proof submitted, the said R. L. Gosnell showed to the secretary of the interior that the tract was at the time actually occupied for townsite purposes; and that those persons who had formerly occupied the townsite of Hazel, including this plaintiff, had abandoned said townsite of Hazel, and were actually at the time occupying lots in the said proposed townsite of Frederick and engaged in trade and business thereon; and because of such showing the honorable secretary of the interior caused a patent to be issued for said tract to the defendant, R. L. Gosnell, for townsite purposes; and that by reason of the issuance of said patent to said defendant for townsite purposes and under the proof, as aforesaid, a constructive trust was created in favor of the occupants of the lots of said townsite of the lots which they were at that time occupying for the purpose of trade and business, and especially this plaintiff, who, under the terms of the contract with the defendant, had entered upon and selected lot twenty-one (21), in block twenty-four (24), in said town of Frederick, which was one of the lots opened for selection by plaintiff under said written agreement, and had moved his store house thereon, and was occupying the same, and by reason of the facts set forth, of the issuance of a patent to said tract of land to said Gosnell for townsite purposes, as aforesaid, a constructive trust was created in the said R. L. Gosnell for the use and benefit of the plaintiff of said lot twenty-one (21), in block twenty-four (24), in the town of Frederick. Plaintiff further alleged that while the legal title to the town of Frederick was taken and vested in the defendant, R. L. Gosnell, it was partnership property held by him for the common use and benefit of himself, the Bes Line Townsite Company, Bismark Houssels, and certain other persons associated with them, known as the

Frederick Townsite Company. and that the legal title to said lot twenty-one (21), in block twenty-four (24), still remains in the said R. L. Gosnell, and that he fails and refuses to convey the same to this plaintiff. Wherefore plaintiff prayed for the title to said lot, and that the title to the same held by the defendant be decreed a trust for the use and benefit of the plaintiff, and that conveyance by a good and sufficient title and deed be decreed to him.

An examination of the petition discloses that the Kiowa, Comanche and Apache Reservation, of which the tract of land in controversy is a part, was opened to settlement on the 6th day of August, 1901, and, during that year, the defendant, R. L. Gosnell, Bismark Houssels, and certain other persons associated with them, known as the Frederick Townsite Company, entered into an agreement and understanding with themselves and with the Bes Line Townsite Company to acquire title to a tract of land in Comanche county, Oklahoma Territory, along the line of the Blackwell, Enid & Southwestern Railroad, which was then being constructed through said county, that said tract of land should be platted for townsite purposes for the joint use and benefit of all the parties. The exact date when the defendant made his homestead entry upon the tract in question does not appear. If alleged to have been made subsequent to the agreement with Houssels and the Townsite Company to open up the same for townsite purposes for their joint use and benefit, it would be fatal to the petition. The theory of the homestead law is that the homestead shall be for the exclusive use and benefit of the homesteader. Section 2290, Revised Statutes U. S., provides: "That a person applying for an entry of a homestead claim shall make affidavit," and, among other things, "such application is made for his exclusive use and benefit, and that his entry is made for the purpose of actual settlement and cultivation and not either directly or indirectly for the use and benefit of any other person"; and section 2291 prescribes the time and manner of final proof and requires that the applicant make "affi-

davit that no part of such land has been alienated except as provided in section 2288," which section provides for alienation for "church, cemetery or school purposes, or for the right-of-way of railroads." The law contemplates five years of continuous occupation by the homesteader, with no alienation except for the above-named purposes. Giving the plaintiff the benefit of the presumption that Gosnell was acting in good faith and was disposed to and did comply with the condition precedent to filing his homestead entry upon the land, and that the facts set forth in his affidavit were true, viz., that his application was made for his exclusive use and benefit and for the purposes of actual settlement and cultivation, and not directly for the use and benefit of any other person, there is no allegation that Gosnell made his applcation to prove up his homestead tract as a townsite prior to the alleged agreement between Houssels, the townsite company, and the Bes Line Construction Company, and the presumption would be that, having entered the land as a homestead, he was occupying it as such at the time of the agreement to dispose of it for townsite purposes. The question, then, arises: Could Gosnell, while occupying the land as a homestead, and prior to filing his application to prove up under the townsite act, showing a change of his intentions, enter into a valid contract to alienate the land or any portion of it? The authorities answer this question in the negative, such a contract being in violation of the homestead law and void.

In *Mellison et al. v. Allen*, 30 Kan. 382, 2 Pac. 97, it was held: "Where a party occupying lands of the United States with a view of acquiring title thereto, under the provisions of the homestead laws before the expiration of five years from the date of his entry and the ripening of his homestead right, sells an undivided interest therein, receives full payment and executes a contract to convey such interest by warranty deed after the perfecting of his title a court of equity will not lend its aid to compel the specific performance of the contract." In *Anderson v. Carkins*, 135 U. S. 483, citing, with approval, *Mellison v. Allen, supra*, it was held:

"A contract by a homesteader to convey a portion of a tract when he shall acquire title from the United States is against public policy and it can not be enforced although a valuable consideration may have passed to the homesteader from the other party." In *Biddle v. Adams*, 5 Kan. App. 734, 46 Pac. 986, it was held: "A mortgage given upon a piece of land prior to the making of, the final proof by a person occupying the same under the homestead laws of the United States is void." The supreme court of this territory, in *Bass v. Smith*, 12 Okla. 485, 71 Pac. 628, held that: "No action either at law or in equity can be maintained on a contract that is forbidden by law. The sound policy of the law is to leave the parties in all such cases without a remedy, since the courts will not lend their aid to a party who bases his action on a contract in violation of the organic law or the statute, or upon an act that is immoral. or is in contravention of sound public policy." In the above case the action was for specific performance to compel the conveyance of a certain tract of land to the plaintiff, and was predicated upon an agreement whereby the plaintiff had agreed with one Smith to furnish money with which to improve a homestead, and as a consideration therefor Smith was to deed the land to the plaintiff. The money was furnished by the plaintiff according to agreement, and, Smith having died, his heirs refused to convey, whereupon the plaintiff brought suit for specific performance. In the opinion by Mr. Justice Hainer, it was said: "The sole question presented by the record is as to the validity of the contract entered into between the plaintiff, Sarah C. Bass, and the decedent, David W. Smith. Was the contract a valid one? Can such a contract be enforced?" These questions must all be answered in the negative, citing numerous authorities to the effect that no action either at law or in equity could be maintained on such a contract forbidden by law. In *Higgins et ux. v. Butler et ux.*, 10 Okla. 345, 62 Pac. 810, the cause of action was based upon a written agreement set out in the petition, in which it appeared that Robert Higgins, one of the plaintiffs in error, was the occupant of a certain tract of land, the title to

which was then in the government of the United States, and that while in said occupancy the plaintiffs in error entered into a contract with the defendants in error whereby they were to furnish a sufficient amount of money to build a house upon said tract of land and to fence same in consideration of the conveyance to them of a one-fourth interest in the land when patent should issue therefor. In pursuance of the terms of the above contract, the petition alleged that the defendants in error paid to the plaintiffs in error a sufficient amount of money, to-wit, $500.00, which was expended by the plaintiffs in error in building a house and fencing the land according to the terms of the agreement; that the patent was issued to one of the plaintiffs in error for said tract; but that the plaintiffs in error refused to convey to the defendant in error the said one-fourth interest, whereby the defendant in error became the equitable owner of an undivided one-fourth interest in said land and was entitled to a conveyance thereof from the plaintiffs in error. In reference to the validity of the contract as set out in the petition, Mr. Justice Irwin, speaking for the court, said: "The first defense relied upon by the defendants was that such a contract to convey land is illegal and void. When we consider that portion of the petition which asks for the specific performance of the contract, or that portion which asks to have the contract considered as a mortgage against the premises, and for a foreclosure of the same, in the light of the doctrine laid down by the supreme court of Kansas in the case of *Mellison v. Allen*, 30 Kan. 382, 2 Pac. 97, the doctrine declared by the California supreme court in the case of *McGregor v. Donnelly*, 7 Pac. 422, we must concede that this contention is correct, and that such a contract is void."

The citation of additional authorities in support of such a well settled proposition of law will be unnecessary. The contract entered into while Gosnell was occupying the land as his homestead, whereby Houssels, the townsite company, and the Bes Line Construction Company were to receive an interest in said land when platted in consideration of locating a depot and station on

said tract, was in violation of the homestead laws and void as against public policy. No legal or equitable right could result from such an agreement, and Gosnell's subsequent application to prove up under the townsite act did not make it valid. The agreement by Houssels for the townsite company to convey a lot to plaintiff was therefore void and of no binding force and effect upon the defendant, and the decree for specific performance could not be predicated thereon.

The judgment of the district court sustaining the demurrer to the petition will therefore be affirmed.

Gillette, J., who presided in the court below, not sitting; Irwin, J., absent; all the other Justices concurring.