## GOSNELL v. PRINCE.

No. 2051.   Opinion Filed September 17, 1912.

Rehearing Denied December 24, 1912.

(129 Pac. 27.)

1. JUDGMENT—Conclusiveness—Matters Concluded.   Where, in a suit to quiet title to certain land, certain contracts and transactions were adjudged illegal and void and to create no right or title in the plaintiff in that suit, it was prejudicial error in an ejectment suit to recover the land, brought by the defendant in the suit to quiet title against the plaintiff in the suit to quiet title, to admit evidence of the making of the contracts and occurring of the transactions.

2. JURY—Number of Jurors.   In an action brought prior to statehood, but tried since statehood, a unanimous verdict of the jury is required.

(Syllabus by Rosser, C.)

*Error from District Court, Tillman County;
J. T. Johnson, Judge.*

Action by R. L. Gosnell against J. H. Prince.   Judgment for defendant, and plaintiff brings error.   Reversed and remanded.

*McElhoes, Ferris & Rhinefort* and *George Ahern,* for plaintiff in error.

*Mounts & Davis,* for defendant in error.

Opinion by ROSSER, C.   This is an ejectment suit brought by R. L. Gosnell against J. H. Prince to recover a certain lot in

the town of Frederick. The land was patented to Gosnell by the United States government, and it is not claimed that he has ever made a written conveyance of the lot to any one. From the evidence it appears that, when the Blackwell, Enid & Southwestern Railway was projected, several gentlemen of Vernon, Tex., agreed to engage in the business of locating town sites and selling lots along the new road. They foresaw a future for a town at or near where Frederick, Okla., is now situated, and entered into an agreement with S. N. Gosnell (not the plaintiff in this case) to locate four homesteaders on the site of Frederick, and to get the homesteaders to convey to the company to be formed by the Vernon parties. S. N. Gosnell filed four persons according to his agreement, one of whom is the plaintiff here. Before the persons so filed had made final proof or obtained titles, people began to settle on the town site and to make improvements. About the same time some other parties conceived the idea that they also could make some money in the town-site business, and with that end in view started a town at Hazel, which it seems was about a half mile from the town site of Frederick. The Vernon people had an understanding with the railroad company by which the station was to be located at a point to be designated by them, and with this for a lever they proceeded to pry off, from time to time, a portion of the inhabitants of Hazel and to locate them in their town site of Frederick. Among others who had located at Hazel was the defendant, Prince. Under an agreement with Mr. Bismark Houssells, who was looking after the matter for the Vernon people, he moved his drug store from the town of Hazel to the lot now in controversy, and became identified with the town of Frederick. By written agreement, made before the defendant moved to Frederick, Houssells, for the town-site company, promised to give to Prince a lot in Frederick. This agreement was dated April 4, 1902, before plaintiff had any title, and before the Vernon people could lawfully contract for title. The plaintiff was not in Frederick at the time the defendant moved on the lot. In July following the move, Gosnell brought an unlawful detainer proceeding against the defendant in the justice court and was defeated. He tried

to take an appeal, but for some reason the appeal was not perfected. In the latter part of the year he made application to prove up and have patent issued for town-site purposes. The secretary approved the town site, and a patent was issued to plaintiff. The Vernon people advanced plaintiff money to pay for the land, and a final receipt was issued to him December 24, 1902. The amount advanced was about $1,400. When plaintiff obtained title to the quarter section, the Vernon people made another contract with him by which he was to get one-tenth of the proceeds of the land. They formed a corporation in which he received one-tenth of the stock. He refused, though, to make a deed to the lot in suit to the defendant, and refused to deed it to the town-site company.

Some time after plaintiff obtained title from the government, defendant brought a suit against him to quiet title, and alleged the facts, as to how the land was obtained, that he was in possession under contract with Houssells and had made improvements. He also alleged that, in order to obtain the approval of the secretary of the town site, Gosnell had represented that persons had gone on the land and made improvements, and that, by reason of all these things, a trust had been created on the lot in his favor. The trial court sustained a demurrer to the petition, and on appeal the decision of the trial court was affirmed; the case being reported in 19 Okla. 175, 92 Pac. 164. The Supreme Court of the territory of Oklahoma held that a contract by a homesteader, made before he had obtained title, to alienate the land, when he should have obtained the title, was void, and that no right, either in law or equity, could grow out of such a contract, and that the contract by which Houssells for the town-site company agreed to give defendant a lot was void. The town-site company made considerable effort to get plaintiff to convey to defendant, but failed. It then made a conveyance to defendant dated July 15, 1908. The issue submitted to the jury was whether or not the plaintiff, subsequent to the 24th of December, 1902, the date of the final receipt, agreed to convey the lot to the Frederick Town-site Company.

Gosnell v. Prince.

The defendant, over the objections of the plaintiff, was permitted to introduce evidence of transactions and negotiations prior to December 24, 1902. A large portion of the evidence related to such matters. This is assigned as error. It may well be doubted whether the facts pleaded constituted a defense to the action, because they were all in existence and within defendant's knowledge at the time he brought the suit to quiet the title to the land. *Farmers' State Bank v. Stephenson*, 23 Okla. 695, 102 Pac. 992; *El Reno v. Cleveland-Trinidad Pav. Co.*, 25 Okla. 648, 107 Pac. 163, 27 L. R. A. (N. S.) 650. It seems to be a case for the application of the maxim, *"Nemo debet bis vexari pro una et eadem causa."* But not deciding this point, because not raised by the parties, there can be no question that evidence concerning contracts held void in the suit to quiet title was not admissible in this suit. The admission of the written agreement by Houssells to give defendant a lot was highly prejudicial to plaintiff. It had been held void in the former case, and should not have been admitted. See *Corry v. Corry Chair Co.*, 18 Pa. Super. Ct. 271; *Union Sav. & L. Ass'n v. Byrne*, 114 Fed. 831, 52 C. C. A. 465; *Glencave Granite Co. v. Cutlan* (1896) 1 Chan. 667; *Lindquist v. Maurepas Land & Lbr. Co.*, 112 La. 1030, 36 South. 843; *Breeze v. Haley*, 11 Colo. 351, 18 Pac. 551.

The court instructed the jury that three-fourths concurring could return a verdict, and the verdict was in fact returned by ten jurors concurring. The case was pending at statehood. It was necessary for all the jurors to concur in order to render a verdict. *Pacific Mut. L. Ins. Co. v. Adams*, 27 Okla. 496, 112 Pac. 1026; *Kerfoot-Bell Co. v. Kerfoot*, 30 Okla. 19, 118 Pac. 367; *Border v. Carrabine*, 30 Okla. 740, 120 Pac. 1087; *McLeon v. Spencer*, 34 Okla. 647, 126 Pac. 753.

The case should be reversed and remanded.

By the Court: It is so ordered.